IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JAMES T. RICHARDS,

    Plaintiff,

v.

STEPHEN KING, SIMON AND
SCHUSTER, INC. AND WARNER
BROTHERS, INC.,

    Defendants.

CIVIL ACTION
NO. 04-12709-WGY

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT DISMISSING THE SECOND AMENDED COMPLAINT**

Defendants Stephen King ("King"), Simon & Schuster, Inc. ("Simon & Schuster") and Warner Bros. Entertainment Inc. ("Warner Bros.") (sometimes referred to collectively as "defendants") submit this memorandum of law in support of defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (b) dismissing the Second Amended Complaint on the grounds that no issue of material fact exists, and that defendants are entitled to judgment on the merits as a matter of law.

## **INTRODUCTION**

Defendant Stephen King is one of the most popular fiction writers of our time. For more than a quarter of a century, he has been writing stories that spellbind readers all over the world. Among his writings are more than thirty bestsellers, many of which have been adapted for motion pictures and television, including such works as *Carrie, Salem's Lot, The Shining, The Stand, The Dead Zone, Firestarter, Cujo, Christine, Pet Sematary, Thinner, Misery, The Tommyknockers, The Green Mile, The Girl Who Loved Tom Gordon* and *Dreamcatcher*.

As will be set forth more fully below, defendants Stephen King, Simon & Schuster and Warner Bros. are entitled to summary judgment dismissing the Second Amended Complaint because: (i) as a matter of law, there exists no substantial similarity of copyrightable expression between plaintiff's unpublished autobiographical work and King's published work of fiction; (ii) the points of alleged similarity between the works in issue, involving merely non-copyrightable elements (*i.e.* the name of a character and the "idea" of a specific character trait), cannot, as a matter of law, support a claim of copyright infringement; and (iii) as a matter of law, Mr. King had no "access" to plaintiff's work.

The primary substantive ground of the motion is the pervasive striking dissimilarity of the creative expression that comprise the works in issue. The plaintiffs' non-fictional autobiographical account and Stephen King's work of fiction entitled "The Green Mile," apart from their total dissimilarity of genre and subject matter, share no similarity of creative expression. Indeed, there is not one sentence in common between them. Therefore, no finder of fact could reasonably conclude that the copyrightable expression contained in the works in issue is "substantially similar" - - the quintessential element of proof necessary to sustain a

copyright infringement claim. See Point I(b), *infra*. On that basis alone, the Second Amended Complaint should be dismissed as a matter of law.

The alternative ground for dismissal of the Second Amended Complaint is that plaintiff's copyright infringement claim premised solely upon the alleged similarity of non-copyrightable elements, in this case, a similar name shared by the central fictional character in King's work and a person briefly referenced in plaintiff's factual narrative, and an allegedly similar idea that each possesses healing powers that gets him in trouble with the law (Second Amended Complaint, ¶¶ 19, 20) is not sustainable as a matter of law. See Point I(c), *infra*.

The second alternative ground for dismissal of the Second Amended Complaint is that the one manuscript that plaintiff claims to have mailed to King in 1988 (Second Amended Complaint, ¶¶ 9-10) contains none of the references upon which plaintiff bases his claim. Moreover, the allegation that plaintiff mailed a copy of his manuscript to King was expressly retracted by plaintiff as a "fabrication" in a document styled "Motion for Summary Judgment," filed subsequently with this Court. See Herbert Aff., Exh. G. Accordingly, as a matter of law, it cannot be found that King had "access" to plaintiff's manuscript - - a necessary element of any copyright infringement claim. See Point I, *infra*.

Because dismissals based on technical deficiencies in the pleadings, or concessions of a *pro se* plaintiff who is arguably mentally ill, could be set aside on appeal, and because (i) a mere comparison of the copyrightable expression contained in the works in issue demonstrates so clearly and immediately the absence of any actionable similarity, and (ii) the facts underlying plaintiff's complaint are so palpably insufficient as a matter of law to sustain a copyright infringement claim, defendants, upon the Statement of Material Facts set forth herein, the accompanying affidavits of Peter Herbert, Esq., sworn to May 31, 2005 ("Herbert

3

Aff."), Stephen King, sworn to May 27, 2005 ("King Aff."), and Ralph Vicinanza, sworn to May 26, 2005, and the exhibits annexed thereto, this supporting memorandum of law, and the pleadings filed herein, hereby move for summary judgment, pursuant to Fed. R. Civ. P 56(b), dismissing on the merits the Second Amended Complaint.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, the following is a statement of the material facts as to which there is no genuine issue to be tried:

1. Plaintiff claims to be the author of an unpublished literary work entitled "The Selling of the President 2000: A Primer for High School Students," written in 1987 under the pseudonym "James Belcher (the "Original Manuscript"), as to which plaintiff registered a claim to copyright with the United States Copyright Office on December 23, 1897. See Copyright Registration Certificate No. TXu 309-539, filed December 23, 1987 (Herbert Aff., Exh. A).

2. A certified copy of the Original Manuscript deposited by plaintiff with the Copyright Office is annexed to Herbert Aff. as Exh. B.

3. It is a copy of the Original Manuscript that plaintiff claims to have mailed to defendant Stephen King in 1988 (Second Amended Complaint, ¶¶ 9-11). This allegation was subsequently retracted by plaintiff as a fabrication (Plaintiff's Motion for Summary Judgment, p.1, annexed to Herbert Aff. as Exh. G).

4. The Original Manuscript is a non-fiction, autobiographical account of actual events in the life of the plaintiff, interspersed with plaintiff's personal philosophy on a variety of subjects, including mental illness, drug abuse, politics and culture in America. See Copyright

4

Registration Certificate TXu 309-539 (Herbert Aff., Exh. A); Original Manuscript, p.7 (Herbert Aff., Exh. B).

5.   There is no reference to any individual or character by the name of "James Coffee" or "James Coffey" in the Original Manuscript. See Original Manuscript (Herbert Aff., Exh. B).

6.   Plaintiff claims to have completed in 1992 an unpublished literary work alternatively entitled "Don't Shoot Me, I'm Only Psychotic" or "The Selling of the President – 2000" (the "1992 Derivative Manuscript"), as to which plaintiff registered a claim to copyright with the United States Copyright Office on May 29, 1992. See Copyright Registration Certificate No. TXu 521-439, filed May 29, 1992 (Herbert Aff., Exh. C). Plaintiff, in the registration certificate, describes the work as a "non-fiction autobiography with interspersed satirical essays" and claims that the work is derived from the Original Manuscript with the addition of new autobiographical material that occurred since December, 1987. See Copyright Registration Certificate No. 521-439 (Herbert Aff., Exh. C).

7.   A certified copy of the 1992 Derivative Manuscript deposited by plaintiff with the Copyright Office is annexed to Herbert Aff. as Exh. D.

8.   Plaintiff does not allege in the Second Amended Complaint having ever provided defendant Stephen King with a copy of the 1992 Derivative Manuscript (Second Amended Complaint).

9.   Like the Original Manuscript from which the 1992 Derivative Manuscript is derived, the 1992 Derivative Manuscript is also a non-fiction, autobiographical account of actual events in the life of the plaintiff, interlaced with plaintiff's personal philosophy on a

variety of subjects. See Copyright Registration Certificate TXu 521-439 (Herbert Aff., Exh. C); 1992 Derivative Manuscript, pp. 1(a)–1(e) (Herbert Aff., Exh. D).

10. On pp. 149-156 of the 1992 Derivative Manuscript, plaintiff recounts that his father, who was concerned that plaintiff was "getting manic," suggested that he visit a man by the name of John Coffee, who was described as a substance abuse counselor at an Indian reservation in Princeton, Maine. Plaintiff reports having searched for Mr. Coffee to no avail. Thus, Mr. Coffee does not appear in the 1992 Derivative Manuscript. See 1992 Derivative Manuscript, pp. 149-156 (Herbert Aff., Exh. D);

11. Plaintiff claims to have completed in 1994 an unpublished "rewrite" of the Original Manuscript and the 1992 Derivative Manuscript which he embodied in a derivative work alternatively entitled "Traveling Through A Psychotic World" or "The Selling of the President – 2000/ "Don't Shoot Me, I'm Only Psychotic" (the "1994 Derivative Manuscript"), as to which plaintiff registered a claim to copyright with the United States Copyright Office on December 22, 1994. See Copyright Registration Certificate No. TXu 666-067, filed December 22, 1994 (Herbert Aff., Exh. E).

12. A certified copy of the 1994 Derivative Manuscript deposited by plaintiff with the Copyright Office is annexed to Herbert Aff. as Exh. F.

13. Plaintiff does not allege in the Second Amended Complaint having ever provided defendant Stephen King with a copy of the 1994 Derivative Manuscript (Second Amended Complaint).

14. Like the Original Manuscript and 1992 Derivative Manuscript, the 1994 Derivative Manuscript is also a non-fiction, autobiographical account of actual events in the life of the plaintiff, interlaced with plaintiff's personal philosophy. See Copyright Registration

6

Certificate TXu 666-067 (Herbert Aff., Exh. E); 1994 Derivative Manuscript (Herbert Aff., Exh. F).

15. On pp. 2-9 of the 1994 Derivative Manuscript, plaintiff again recounts the story of his futile search for a substance abuse counselor by the name of John Coffee (spelled "Coffey" in the 1994 Derivative Manuscript). See 1994 Derivative Manuscript, pp. 2-9 (Herbert Aff., Exh. F);

16. Defendant Stephen King is author of the work of fiction entitled *The Green Mile,* that he completed on April 28, 1996. See King Aff.,¶¶ 1, 2.

17. A true copy of *The Green Mile* is annexed to the Vicinanza Aff. as Exh. A.

18. The Green Mile is the walk that prisoners condemned to death take from E-block to what is referred to at Cold Mountain Penitentiary as "Old Sparky." The prison guard, Paul Edgecombe, recounts the tale of an in-mate he would never in his lifetime forget - - John Coffey - - all six foot eight of him, who transformed the prison from a hotbed of violence to a place of wonder (Vicinanza Aff., Exh. A).

19. Stephen King's John Coffey is a highly developed fictional character, and the central character of the *The Green Mile* (Vicinanza Aff., Exh. A).

20. There is no similarity of copyrightable expression as between the autobiographical account authored by plaintiff that is the subject of this action and Stephen King's work of fiction entitled *The Green Mile.* See Herbert Aff., Exhs. B, D and F; Vicinanza Aff., Exh. A.

## **ARGUMENT**

### **I.**

### **PLAINTIFF'S COPYRIGHT CLAIM SHOULD BE DISMISSED BECAUSE NO TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE WORKS IN ISSUE ARE SUBSTANTIALLY SIMILAR IN THEIR COPYIGHTABLE EXPRESSION OR THAT DEFENDANT KING HAD ACCESS TO PLAINTIFF'S MANUSCRIPT**

Rule 56 (c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment should be granted where the record shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Initially, the moving party must demonstrate the absence of a genuine issue of material fact; however, it is sufficient for such purposes merely to point out the absence of evidence to support the non-movant party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986); Potterton v. Porter, 810 F.2d 333 (1st Cir. 1987). The non-moving party then has the burden of coming forward with evidence of "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 322.

In addressing a summary judgment motion, the court must focus on both the materiality and genuineness of any opposition. "It is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, the court must grant summary judgment where the non-movant's evidence is merely colorable, speculative or not significantly probative. Anderson, 477 U.S. at 249-50; Masdea v. Scholz, 742 F.Supp. 713, 715 (D. Mass. 1990).

Thus, even at this stage, plaintiff must offer more than mere speculation and conjecture. To defeat a summary judgment motion, the plaintiff must offer sufficient proof to support a jury verdict in his favor. Goenaga v. March of Dimes Defects Foundation, 51 F.3d 14, 18 (2d Cir.

8

1995). "Conclusory allegations will not suffice to create a genuine issue of fact. <u>Delaware & Hudson Ry. V. Consolidated Rail Corp.</u>, 902 F.2d 174,178 (2d. Cir. 1990).

a.  **Elements of Proof**

To succeed on a claim of copyright infringement, " 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.' " <u>Segrets v. Gillman Knitwear Co.</u>, 207 F.3d 56, 60 (1st Cir. 2000), <u>cert denied</u> 2000 U.S. LEXIS 5202, <u>citing</u> <u>Lotus Dev. Corp. v. Borland Int'l.</u>, 49 F.3d 807, 813 (1st Cir. 1995), <u>quoting</u> <u>Feist Publications v. Rural Tel. Serv. Co.</u>, 449 U.S. 340, 361, 111 S. Ct. 1282 (1991).

Copying may be inferred where a plaintiff establishes that (i) defendant had access to the copyrighted work, and (ii) there is a substantial similarity of expression in the respective works. <u>Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.</u>, 150 F.3d 132, 137 (2d Cir. 1998); <u>Lotus Dev. Corp. v. Borland Int'l.</u>, <u>supra</u> at 813, <u>aff'd</u> 516 U.S. 233, 111 S. Ct. 804 (1996).

Once copying has been established, a plaintiff must next demonstrate that the copying was unlawful by showing that the substantial similarity that exists between the works in issue, from the perspective of a lay observer, is of copyrightable expression, as distinguished from non-copyrightable elements. <u>See</u> <u>Castle Rock</u>, 150 F.3d at 137; <u>Repp v. Webber</u>, 132 F.3d at 889 (2d Cir. 1997), <u>cert. den.</u>, 525 U.S. 815 (1998); <u>CCM Cable Rep. v. Ocean Coast Properties</u>, 97 F.3d 1504, 1513 (1st Cir. 1996); <u>Williams v. Crichton</u>, 84 F.3d 581, 587 (2d Cir. 1996).

Thus, although the existence of substantial similarity often presents a fact issue for jury resolution, a court may "determine non-infringement as a matter of law on a motion for

summary judgment, either because the similarity between the two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." CCM Cable Rep., supra at 1517; Warner Bros., Inc. v. American Broad. Co., 720 F.2d 231, 240 (2d Cir. 1983).

Because "a determination of substantial similarity requires a detailed examination of the works themselves," the court must read the works in issue in their entirety. CCM Cable Rep., supra at 1514-15; Williams, supra at 583; Walker v. Time Life Films, Inc., 784 F.2d 44, 49 (2d Cir. 1986); Hogan v. DC Comics, 48 F. Supp. 2d 298, 300 (S.D.N.Y. 1999). Even were this Court to credit plaintiff's earlier claim that Stephen King had access to his unpublished manuscript (a claim that plaintiff has since retracted), plaintiff's claim must fail without the fundamental proof that the two works are substantially similar in their protectible expression. Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 765 (2d Cir. 1991); Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946). In other words, the requirement of proving substantial similarity is independent of the requirement of a showing of access, and only by demonstrating "substantial similarity" of protectible expression between the works in issue can a finding of copyright infringement result. See CCM Cable Rep., supra at 1514; Williams, supra at 587; Gaste v. Kaiserman, 863 F.2d 1061, 1067 (2d Cir. 1988).

**b.** **No Substantial Similarity**

The Original Manuscript, the 1992 Derivative Manuscript and the 1994 Derivative Manuscript are all non-fictional, autobiographical works that report events in the life of the plaintiff, interspersed with philosophical musings on aspects of contemporary life in America.

In a strikingly different vein, Stephen King's literary work of fiction tells the story of life on death row in a Southern penitentiary, of the characters waiting to walk The Green Mile

to Old Sparky, and of John Coffey, the unforgettable prisoner who, through his compassion and extra-sensory powers of healing, transforms executioner's row into a place of wonderment.

While the 1992 Derivative Manuscript and the 1994 Derivative Manuscript make brief reference to an individual by the name of "John Coffee," in the former case, and to a "John Coffey," in the latter, in both cases a drug abuse counselor living on an Indian reservation in Princeton, Maine, in neither manuscript does the individual actually appear.

As neither names nor ideas constitute copyrightable expression, the similarity of such non-protectible elements cannot, as a matter of law, legally support a copyright infringement claim, see Point II, infra. Moreover, because the works in issue possess absolutely no copyrightable expression in common - - not to mention the "substantial" amount of similar protectible expression necessary for a finding of copyright infringement - - plaintiff's copyright infringement claim must fail as a matter of law.

c.  **No Access**

In this case, there is no basis for a claim of copyright infringement since there can be no evidence of prior access to plaintiff's work by Stephen King. "Plaintiff bears the burden of producing 'significant, affirmative, and probative evidence' to demonstrate that defendant had access to its claimed work." Beeba's Creations, Inc. v. Details Sportswear, Inc., 92 Civ.6611 (KTD), 1994 U.S. Dist. Lexis 8020, at *7 (S.D.N.Y. June 15, 1994) (quoting Intersong-USA v. CBS, Inc., 757 F. Supp. 274, 281 (S.D.N.Y. 1991). Plaintiff must introduce "evidence of a reasonable possibility of access. Access must be more than a bare possibility and may not be inferred through speculation or conjecture." Gaste v. Kaiserman, 863 F.2d 1061, 1066 (2d Cir. 1988).

Of the three manuscripts that plaintiff claims to have authored e.g. the Original Manuscript created in 1988, the 1992 Derivative Manuscripts and the 1994 Derivative Manuscript, it is only the Original Manuscript that plaintiff initially claimed to have mailed to Stephen King in 1988 (Second Amended Complaint, ¶¶ 9, 10).  Fatally, the John Coffee/Coffey reference that is the essence of plaintiff's copyright infringement claim is nowhere to be found in that manuscript.  It is only the 1992 Derivative Manuscript and the 1994 Derivative Manuscript that references plaintiff's futile search for a drug abuse counselor by the name of John Coffee/Coffey, and nowhere in the Second Amended Complaint does plaintiff allege that those unpublished manuscripts were ever made available to Mr. King.

Thereafter, plaintiff, in what he styles a Motion for Summary Judgment, concedes that his prior allegation of having mailed a copy of the Original Manuscript to Stephen King was a fabrication. See Plaintiff's Motion for Summary Judgment, p.1 (Herbert Aff., Exh. G). Moreover, Stephen King denies prior knowledge of the plaintiff or ever having seen or received any manuscript purportedly written by plaintiff. See King Aff., ¶ 3.  Indeed, it has been at all times King's policy and practice not to receive unsolicited manuscripts. See King Aff., ¶ 4. Accordingly, summary judgment should be granted as no finder of fact could reasonably conclude that King had "access" to the manuscript in issue.

## II.

### PLAINTIFF'S COPYRIGHT CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF'S CLAIMS OF SIMILARITY RELATE SOLELY TO NON-PROTECTIBLE ELEMENTS

Copyright protection does not extend to abstract ideas, but only to the manner in which ideas are expressed. 17 U.S.C. § 102(b); Matthews v. Freedman, 157 F.3d 25, 27 (1st Cir. 1998)

("a major limitation on what is protectible under the copyright laws is capsulized in the notion that copyright protects the original expressions of ideas but not the ideas expressed."). 1 Nimmer on Copyright, § 2.03[D] at 2-36.2. Thus, a similarity of non-protectible ideas cannot legally support a copyright infringement claim; otherwise, free expression would be unconstitutionally restricted.  Ilog, Inc. et al v. Bell Logic, LLC, 181 F.Supp.2d 3, 14 (D. Mass. 2002).

In the recent case of Starobin v. King et al., 137 F. Supp.2d 93 (N.D.N.Y. 2001), the United States District Court for the Northern District of New York granted summary judgment dismissing a copyright infringement claim asserted against Stephen King in connection with King's novel entitled "Desperation."  The court found that the countless examples of alleged similarities between the two works in issue cited by the plaintiff "simply do not contain any evidence of plagiarism of any expression  of an idea or fact which is protectible under copyright law." (emphasis added). Starobin at 97.  In dismissing the complaint, the court, citing Rogers v. Coons, 960 F.2d 301, 308 (2d Cir. 1992), emphasized that "examination of the works for substantial similarity must focus on the similarity of expression of an idea or [sic] fact, not on the similarity of the facts, ideas or concepts themselves." Id.

The same principle applies with equal force to mere names, words, short phrases, titles and the like. CMM Cable Rep., Inc. v. Ocean Coast Properties, 97 F.3d 1504, 1520 (1st Cir. 1996). Indeed, Section 202.1 of the Regulations of the Copyright Office expressly provide:

> **Material not subject to copyright**
>
> The following are examples of works not subject to copyright and applications for registration of such works cannot be entertained:
>
> (a) Words and short phrases such as names, titles and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring, mere listing of ingredients or contents.

37 C.F.R. § 202.1.

Accordingly, plaintiff's copyright infringement claim, being premised solely upon the similarity of a non-protectible name, John Coffee/Coffey, or the alleged similarity of the non-protectible idea of an individual possessing healing powers that gets him in trouble with the law (Second Amended Complaint, ¶¶ 20, 21), is deficient as a matter of law, and should be dismissed.

## CONCLUSION

For the above stated reasons, defendants' motion for summary judgment should be granted.

Respectfully submitted,

STEPHEN KING, SIMON & SCHUSTER, INC.
and WARNER BROS. ENTERTAINMENT INC.

By their attorneys,

 /s/ Peter Herbert
Peter Herbert (Admitted Pro Hac Vice)
Amy B. Spagnole (BBO#645304)
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109-1775
(617) 345-9000

Dated: June 1, 2005

## CERTIFICATE OF SERVICE

I, Amy B. Spagnole, hereby certify that on the 1st day of June, 2005, I caused a copy of the foregoing to be served on Plaintiff, James T. Richards at 22410 Norfolk County Correction Center PMX-5, 200 West Street, Dedham, MA 02027-0149 by first class mail postage pre-paid.

 /s/ Amy B. Spagnole